United States v. Russell Hampton, No. 202986 Good morning. Good morning. May it please the Court, I'm Tina Schneider. I represent Russell Hampton. This is a case about vindictiveness on resentencing. Mr. Hampton had a total of 13. He was found to be in criminal history Category 1. In 2015, when he was resentenced pursuant to 3582C, when there were changes made in the guidelines range for drug convictions, in 2015, he was again found to be in criminal history Category 1. Look, I think we understand the facts. I guess what your argument is, is that even though the sentence went down every time, we should presume vindictiveness because the probation department's PSR calculations added something the last go-round that wasn't there the first time, right? Yes. And is there any authority, is there any case, any case where vindictiveness has been presumed where a sentence went down? No, but there is case law from this Court and from the U.S. Supreme Court that says when the district court relies on an incorrect guideline range . . . Okay, that's a different question. Are you saying that this is a . . . are you saying that the last PSR was incorrect? Yes. Yes. You're saying that it was wrongly calculated, not simply that it was different from before and there's kind of a lenity or a equitable argument that it should stay the same? I'm saying both things. Okay. So you're saying the 2E 1.1 did not apply, the overlooked RICO exception? Yes. You're saying that this was wrong? Well, here's what I'm saying. Probation found the first three times around that his drug priors should be counted as relevant conduct, not as priors. This last resentencing in 2020 for the first time, probation said, no, they shouldn't be counted as relevant conduct. They should be counted as priors. There is nothing in the record to show that probation thought its first three determinations, that these priors should count as relevant conduct and not as priors, were wrong. But that's a stopple argument. I mean, is there a legal argument that this was a wrong calculation? Yes. Okay. The legal argument is that probation, the first three times around, found it was one way. Clearly. What is wrong about the last time around? What did they get wrong about the interpretation of that note? Well, I think the question shouldn't be, is this correct or incorrect? The question should be, is there any new information concerning the underlying conduct or what the defendant has done since the last resentencing? You mean the new probation officer can't just say, oh, we overlooked Section 2E1.1 application note. We missed it last time. They're essentially stopped from doing that this time? Yes. Yes. But I think it's important to note, too, that it wasn't like probation came back and said, oh, my gosh, we made a mistake these first three times around, although that's how the Court characterized it. What probation said in response to the defense objection to this interpretation was simply that the priors were, quote, appropriately assessed criminal history points in the current pre-sentence report. That's at our sealed appendix at 53. Do you have any authority for this estoppel argument? Well, Pierce. Pierce says, look, you're not allowed to just rejigger things to the defendant's detriment in order to punish him, make hollow his earlier victory. Well, yes. Look, if there's a presumption and if you can't establish a presumption, and usually presumptions are because the sentence went up, not because it went down. If you can't establish a presumption, then you get to establish actual vindictiveness. Is there anything in the record that shows actual vindictiveness? Well, okay, a few things there. First off, there's nothing in the record where probation came and said, oh, we're peeved that you keep winning on appeal, so we're going to change the guideline range to punish you. Of course there isn't. They're not that stupid. But what we do have is probation looking at the guideline range differently this time, not because of anything my client did or any new information about the underlying offense, but because they did. So we're not saying, we're saying that it is presumptively vindictive for probation to have looked at the priors this way, and the court, having relied on that flawed, presumptively vindictive PSR, kind of, you know, made that actionable. I didn't see anything in the transcript or the record that suggested that, apart from the district court saying, I adopt the revised PSR, that he would have done anything else than what he did. Do you expect a different result if we were to vacate and remand for a full resentencing? I'm not sure how to answer that. But Mr. Hampton is entitled to a chance at a different result. The court did say, and it's sentencing here, at a minimum, I'm going to depart 10 years from what I believe is the appropriate guideline. So the court said, I'm starting with probation's new guideline, and I'm going to depart at least 10 years. Mr. Hampton deserves the chance to go back and say to the judge, my conduct has been outstanding. Everyone agrees. And you said you were going to depart at least 10 years. The judge is not tied to that. And they would still be starting with the same revised PSR. They would be starting with the revised PSR that did not place him in criminal history category three. We're asking that the court use the former criminal history category, category one, to determine his new offense. But you're asking us to do that even if we think it was correctly calculated the last time. Yes. You're saying we should be announcing a new rule that honoree sentencing, a court and probation is obligated to endorse the prior application, unless it is to the defendant's benefit. It is not a new rule, Your Honor. It is pierced, just in a different setting. You're not allowed to rejigger things to the defendant's detriment. Thank you very much. We'll hear from the government. Good morning. May it please the Court. Catherine Gregory, Assistant U.S. Attorney representing the United States. This court should affirm the sentence because the district court calculated the sentencing guidelines correctly. And with Mr. Hampton having received a significantly lower sentence of 216 months, there is simply no basis for a vindictive misclaim. Now first, the criminal history was properly calculated as a category three. I don't believe Mr. Hampton is saying that the guideline itself says something differently than it says. It clearly addresses this kind of situation, where there is a racketeering defendant with multiple prior convictions. So I hear all that. I guess the one thing that is a little frustrating is that there was no real acknowledgment or explanation for it below. You would concede that much, I assume. There was some discussion with the district court with probation about the fact that it was different. And I believe the probation officer actually cited the case that she had done some legal research and cited one of this court's precedents as why she believed that this applied. The district court discussed it. There wasn't an explicit explanation as to why you could say it changed. But it is certainly applicable. And when a defendant undoes the sentencing not, as this court says, on a resentencing, you run the risk of a possible thing that was missed. Except that this particular point had nothing to do with the undoing of this particular not. And I do want to ask, I'm more curious about the argument that it was actually wrong in the 2020 calculation, which I do think that the defendant has preserved here. The 4A1.2, which we use in the district court all the time, says a prior sentence is for conduct not part of the instant offense. That's a guideline. And then this new probation officer found the racketeering point, which was in the commentary in an application note, making an exception to that rule. In this case, though, there were two overlapping charges, one for a racketeering conspiracy and one for a drug conspiracy from January 2006 on. So they were overlapping. The criminal offenses that led to these points were both in that period and apparently part of the instant offense. So which one, what takes precedence, the racketeering application note or the actual guideline that excludes prior sentences from the criminal history calculation when they're both overlapping? I think that's answered by the superseding indictment, the way this was charged, the way this was proven, and RICO cases generally, and I'll explain why. In the superseding indictment, those prior convictions come under the racketeering offenses when they're listing all of the various overacts of the racketeering conspiracy. They're listed by date. You can match them up. And the proof at trial, I believe, tracked that, that those prior convictions went to the racketeering conspiracy. They are not listed in the superseding indictment under the drug conspiracy. I believe in part because you don't have to prove those for the conspiracy. As this court well knows, that offense is based on the agreement. Whereas racketeering, you do have to prove those acts. So those particular prior convictions were not part of the drug conspiracy charge. Is that what you're saying? Correct. In the superseding indictment, that's not how they were arranged. That's not how they were charged. And the drug weight ultimately determined by the jury did not depend on those two prior drug transactions. Correct. The government, on page 15 of our brief, note five, we identified the different witnesses, the co-conspirators who testified to hundreds of purchases that one of them had made. The other testified to the multiple kilograms of cocaine. That those were not dependent on, those drug weights were not dependent on those prior convictions alone. I think one of them, he was asleep at his house and they found some crack cocaine in the bed with him. So that is why the 2E1.1, note four. And that commentary is authoritative, as Stinson tells us. That's why that should control here. And it apparently was missed the first few times around. But other things were missed as well to the defendant's benefit. For example, the 2013 PSR did not have the minor role adjustments for the attempted murders. And he did get the benefit of those in the 2020 PSR. I think it's also important to note that Judge Siragusa came into this with a number firmly in mind. You can see that from the sentencing transcript. He says over and over again, I'm trying to get to 240. How can I get to 240? Why isn't 240 sufficient but not greater than necessary? And he essentially, after there was this exchange about the criminal history category, told defense counsel, and I'm paraphrasing, but I'm going to depart anyway. And he says, unless I hear something from you or your client, I'm thinking 240. Ultimately, he did go down further to 216, which again is why there's no basis here for a vindictiveness claim. Everyone at this sentencing was trying to give Mr. Hampton the benefit of the doubt. If you look at the trial AUSA, he's explicitly said, we're not even going to appeal if you depart further. We're not going to do that based on this particular individual. So because the guidelines were calculated correctly, because there is no basis for a vindictiveness claim, we ask that the court affirm the sentence. Thank you. Thank you. Ms. Schnatter, you have two minutes for both. Thank you. A few things. First, the fact that there were new minor role adjustments here made to the defendant's benefit, they did not affect one iota, the guideline range calculated by probation. Those, because of the grouping rules, the probation could give him the benefit of those minor role reductions without changing the guideline range at all. Moreover, this application note is perhaps not as straightforward as the government would have you believe. Even at sentencing here, the government said, Mr. Hampton was in criminal history category three for RICO purposes, but if you were looking just at the drug conspiracy conviction, he was in category one. And if he got concurrent sentences for those, wouldn't the longer one be the controlling one, that is the RICO one? Yes, but the point is that it's not that clear cut. And the government, in here, the priors were treated both as relevant conduct and as for criminal history points. The government argues in its brief in here that the inclusion of those priors, the conduct underlying those priors as relevant conduct made no difference ultimately because the amounts involved in Mr. Hampton's priors were so insignificant. But maybe that's why probation chose to treat it a certain way the first three times around. It's maybe the assessment is. Wait, is there anything in the record to indicate that the drug weight associated with the earlier convictions was calculated in fashioning the guidelines range for the drug count? No, they were included, they were included. Everything was included. Well, I mean, is there anything to indicate that it actually was included? Like we're counting the five grams that he was found with in the prior state conviction? Well, the first three PSRs said yes, we're counting those as relevant conduct. We're counting them as relevant conduct, right? But there's no indication that the weight was specifically added to the scale. I don't think so, Your Honor. But I think what it comes down to is it's a fiction to pretend that the guidelines, that there's no judgment or discretion in applying the guidelines. Probation has judgment and the ability to assess something and say, well, maybe these drug amounts were so insignificant. I mean, we're talking grams of crack for the earlier priors. Maybe probation decided the first three times around that they shouldn't be used as priors for criminal history category purposes because they would change the guideline range so substantially. And certainly probation has the ability to make that kind of determination. But what's wrong here is they changed their tact now, right when Mr. Hampton had the opportunity to profoundly change his sentence. The five-year mandatory minimum went away and also the mandatory minimum on the counts of conviction went down from 20 years to 10 years. Thank you very much and thank you both. We will reserve decision.